E. L. REESE, BEATRICE WHITE REESE, his wife, J. FREDERICK E. WOOD and JULIA C. WHITE, as Executors, of the last will and testament of GEORGE H. WHITE, deceased, and R. P. REESE, *Appellants*, v. ASHER LEVIN, *Appellee*.

Division A.

Opinion filed September 11, 1929.

Petition for rehearing denied October 14, 1929.

*John S. Beard* and *R. Pope Reese,* for Appellants;

*Watson & Pasco & Brown,* for Appellee.

ELLIS, J.—Asher Levin in July, 1925, entered into a contract of the purchase of a certain lot in Pensacola with E. L. Reese and wife and J. Frederick E. Wood and Julia C. White as executors of the will of George H. White deceased. The price to be paid for the property was $25,000. of which $2,500. was paid in cash to R. P. Reese, who was attorney for the sellers, E. L. Reese and others.

The contract provided, among other things, that the remainder of the purchase price $22,500. should be paid by the purchaser "upon delivery of a good warranty deed conveying a good title" to the property "to the party of the second part or his assigns." Asher Levin was described as party of the second part.

The contract contained the following clauses:

"The parties of the first part agree at their expense to furnish an abstract of title, and the purchase of the property by the party of the second part is conditioned upon the title being good, or being made good within a reasonable length of time.

"It is mutually agreed that the 1925 taxes shall be prorated as of date of actual transfer of the property on basis of rate and assessment for 1924.

"Failure by the party of the second part to complete the purchase within ninety days from the date of this agreement for any reason except defective title, shall cause him to forfeit the $2500. deposited and paid herewith. If the title is not good and not made good within a reasonable length of time, the $2500.00 is to be returned to the party of the second part upon surrender of abstract of title."

The contract was entered into between the parties prior to the passage of Chapter 11383, Laws of Florida, passed at the Extraordinary Session of the Legislature, November 17 to 25, 1925, and approved by the Governor November 30, 1925, which act was designed to afford a prompt and adequate method by which the rightful owner of real property may place his own title in repose by obtaining a speedy adjudication of the effect of hostile claims or clouds. McDaniel v. McElvy, 91 Fla. 770, 108 So. R. 820.

In December the sellers submitted an abstract of title to the purchaser which did not show a good title. Thereupon on January 28, 1926, the sellers brought suit in the Circuit Court for Escambia County against all persons known and unknown to quiet the title. The suit was brought under Chapter 11383, *supra,* and on May 13, 1926, was still pending and undetermined.

Thereupon on the last mentioned date Levin exhibited his bill in chancery setting out the facts as related above the alleging that a controversy had arisen between the parties to the contract in which the sellers contend that the contract requires the buyer to await the result of the suit to remove the cloud on the title and to accept the

deed when a decree shall be entered quieting the title, and the complainant Levin contends that he is not bound by the contract to await the result of the suit. He claims that even if the suit should result in a decree in favor of the sellers the decree would not become absolute before the expiration of one year from the entry thereof. See Chapter 11383, Sec. 7, *supra*.

It is alleged that Levin notified Reese that a reasonable time for making good the title to the property has elapsed and that Reese declared that his clients would retain the cash payment of $2500. and he as custodian thereof would pay it over to them upon the entry of the decree in their favor in the said suit and the tender of a conveyance to Levin if the latter should fail and refuse to make the remaining payment of $22,500. There is no allegation that Levin has made a demand upon Reese for the return of the cash payment. The bill does allege that the complainant Levin is unable to determine what proper construction should be made of the contract of purchase with respect to his rights in the matter of whether a reasonable time has elapsed for the defendants to make good their title to the property and particularly whether the entry of a decree in the suit to quiet title in favor of the sellers will operate and have the effect of making the title to the property good in them within the meaning of the contract and as against the claims of all persons and particularly all unknown persons having interests in the property affected by the contract.

A copy of the bill to quiet title is attached to the bill of complaint as an exhibit.

The prayer is for a declaratory decree determining: whether a reasonable length of time has passed for making good the title by the sellers; whether the complainant by the terms of the contract will be bound to treat a decree

in favor of the sellers in the suit to quiet title as operating to make good the title to the property in the sellers so as to require Levin upon a tender of a deed to him to accept the same and the remainder of the purchase price, and whether the complainant Levin is not entitled to have returned to him the cash payment of $2,500. and stand discharged from the contract. There is a prayer to enjoin Reese from paying over to the sellers the cash payment made and that pending this suit that the other defendants be restrained from forfeiting or attempting to forfeit the same. There was also a prayer for general relief.

A demurrer to the bill was overruled. The demurrer challenged the equity of the bill; that the complainant had a remedy at law for a breach of the contract; that there was no demand by complainant for performance of the contract by defendants; that the complainant does not allege any tender of performance of the contract on his part nor that any demand has been made upon defendants for performance.

Later, without leave of court, another demurrer was interposed by the defendants to the bill attacking the constitutionality of Chapter 7857, Laws of Florida, 1919, entitled ''AN ACT to Authorize Certain Courts in This State to Render Declaratory Decrees in Certain Cases, and to Authorize the Supreme Court to Prescribe Rules to Carry This Act Into Effect.'' See Sec. 4953, Comp. Gen. Laws 1927. That demurrer was also overruled and the defendants appealed from both orders.

The bill is not one for a rescission of the contract upon the ground of defect of title in the sellers, although the complainant upon such ground if established would be entitled to the return of the money paid on the purchase price. Musselwhite v. Oleson, 60 Fla. 342, 53 So. R. 944; Hunter v. Bradford, 3 Fla. 269, text 287.

Although there is no specific prayer for rescission of the contract such relief would not be inappropriate under the prayer for general relief because it is not inconsistent with the general scope and apparent purpose of the bill. Lee v. Patten, 34 Fla. 149, 15 So. R. 775; Edmons v. Gracy, 61 Fla. 593, 54 So. R. 899. When there is a prayer for special relief and a general prayer the court can extend the relief specially prayed for or give such relief as the case warrants. See Lockhart v. Leeds, 195 U. S. 427, 25 Sup. Ct. R. 76, 49 L. Ed. 263; Tyler v. Savage, 143 U. S. 79, 12 Sup. Ct. R. 340, 36 L. Ed. 82; Shelby v. Tardy, 84 Ala. 327, 4 So. R. 276; Enfield Toll Bridge Co. v. Hartford & N. H. R. Co., 17 Conn. 40, 72 Am. Dec. 716; Walker v. Converse, 148 Ill. 622, 36 N. E. R. 202; Davidson v. Burke, 143 Ill. 139, 32 N. E. R. 514, 36 Am St. R. 367; Wilson v. Horr, 15 Iowa 489; Nudd v. Powers, 136 Mass. 273; Whitfield v. Cate, 6 Jones' Eq. (N. C.) 136; Webster v. Harris, 16 Ohio 490; Matthias v. Warrington, 89 Va. 533, 16 So. R. 662; Brown v. Sewell, 11 Hare 49, 15 Eng. Ch. 49, 17 Jur. 708, 68 Eng. Reprint 1182.

There was a contract in writing between the parties for the purchase and sale of land under which the sellers agreed to convey a good title to the purchaser and the latter made a cash payment down of $2,500. The purchase of the property under the terms of the agreement "is conditioned upon the title being good or being made good within a reasonable length of time." The title was not good, as disclosed by the abstract which the sellers were under the necessity of furnishing and did furnish about five months after the contract was made, so they proceeded to institute a suit in the Circuit Court to remove the cloud upon the title against all parties, persons or corporations claiming interest in the property under certain

named deceased persons, about thirty-nine in number, and heirs of them and a few corporations, all numbering about forty more. The places of residence of many of the defendants were alleged to be unknown and the names and residences of others, the heirs, devisees and grantees of parties claiming some interest in the land, were also alleged to be unknown. If the case is not contested, decrees *pro confesso* taken in many cases on constructive or substituted service by publication, and the cause speeded to as early a conclusion as the procedure allows, a determination of the suit may be reached, if none of the defendants litigate the case, within two months after the bill was filed. But the statute permits all defendants who were not personally served with process to cause the case to be opened within six months, litigate the cause and then they may have six months after the decree in which to appeal, which would require perhaps a few more months to finally conclude.

The bill to remove a cloud upon the title discloses that the outstanding adverse interests or claims are numerous and involve questions of descent as well as title which split the potential interest into numerous parts. Prior to the enactment of Chapter 11383, *supra,* the matter of removing all such claims as clouds upon the title either under the statute as it then existed or by obtaining quit claim deeds might have involved a more tedious and longer process than the procedure under Chapter 11383, *supra.*

In view of the obligation of the sellers to convey a good title to the purchaser and the clause by which the sellers were allowed a reasonable time to make a good title, the only question presented is whether the delays actually incurred before beginning the suit and those necessarily incurred by the proceeding may be considered as a reason-

able time to be allowed in making the title good. In this connection may also be considered the unstable or fluctuating values of real estate at or about the time of the contract of which the court will take judicial notice. See McCaskill v. Dekle, 88 Fla. 285, 102 So. R. 252.

We deem it unnecessary to discuss the constitutionality of Chapter 7857, *supra*, because the question which has arisen under the contract in this case being merely whether the delay of five months from the date of the contract when the sellers should have known the condition of their title before submitting an abstract thereof and then the further delay of one month and a half before beginning a suit to remove the clouds upon the title which by the very nature of such proceedings would cause longer delays which might extend over a period of one or two years, was an unreasonable delay. We think that under these circumstances the sellers cannot be said to have made good the title within a reasonable time from the date of the contract and the purchaser is entitled to a rescission of it and refund of the deposit which may be decreed under the bill and prayer for general relief.

In this view of the case we think the decretal orders appealed from should be and they are hereby affirmed.

TERRELL, C. J., AND BROWN, J., concur.

WHITFIELD, P. J., AND STRUM AND BUFORD, J. J., concur in the opinion and judgment.