No. 33,846

O. F. PARKER et al., *Appellees*, v. S. S. MOUSE, *Appellant*.

(84 P. 2d 941)

Opinion filed December 10, 1938.

*I. T. Richardson,* of Emporia, and *Lawrence J. Richardson,* of Topeka, for the appellant.

*O. R. Stites,* of Emporia, and *A. L. Moffat,* of Kinsley, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This was an action brought in Lyon county November 29, 1935, to rescind a written contract for the purchase of 797½ acres of land in Pottawatomie county for $12,760, on which the plaintiff, purchaser, had made a cash payment of $2,000, and for judgment for the $2,000 thus paid with interest because of the failure of the defendant, the landowner, to comply with the terms of the written contract, wherein the owner was required "to furnish warranty deed and abstract brought down to date showing a clear and valid title except a first mortgage of $4,300."

The petition alleged the several steps taken by both parties with reference to the examination of abstracts, requirements thereto, fixing time for closing the deal or rescinding the contract and notice of determination to rescind. Attached as exhibits were copies of the contract and eleven other documents consisting mainly of letters, telegrams and requirements to abstract.

The written contract signed by both parties was dated June 19, 1935. It described the land sold, and part of it was described as the northeast quarter of section 3, township 8, range 7, and the contract provided that the balance of the purchase money "is payable on or before 30 days or when abstract is approved which shall be without [un]necessary delay."

The petition alleged that the "abstracts of title as tendered did not show title in conformity to the terms of said contract," and that they showed a defective title, and upon request of defendant the abstracts were returned with the objections made thereto. One letter, dated August 12, 1935, informed the attorney for defendant that if the contract was not closed to show title according to the contract by September 15, 1935, the purchaser would declare the contract at an end. In the same letter the attorney for the purchaser called the attention of the attorney for the landowner to the fact that there was no abstract for the northeast quarter of section 3 and that the landowner had said the northwest quarter was intended. A reply letter stated that action had been commenced to quiet title and judgment was expected to be rendered therein September 27, 1935. A reply to this letter adhered to the former date

of closing under the contract as September 15, 1935, and on September 16, 1935, attorney for plaintiff notified defendant that the contract was rescinded and demanded the return of the $2,000 cash payment.

In three places in the letter of the examining attorney to his client, the plaintiff, it is suggested that defects ought to be corrected by deeds or by action to quiet title.

The answer of the defendant admitted the contract as alleged and some other matters and denied all other allegations of the petition. Defendant specifically denied that plaintiff had any just ground for rescinding the contract and that plaintiff is entitled to recover any sum whatsoever from the defendant. Defendant alleged that the requirements made by the attorney for the plaintiff were in the alternative, to procure deeds or quiet title, and claimed thereunder the right to use the alternative by quieting title and that the action of the plaintiff in rescinding the contract before the title could be quieted was unreasonable. Defendant alleged that he obtained a judgment quieting such titles on September 30, 1935, and tendered the extended abstracts to plaintiff's attorney, who declined to receive them because the contract had been rescinded for noncompliance. The defendant further alleged good faith on his part and arbitrary and unreasonable conduct on the part of plaintiff, and prayed that plaintiff take nothing and defendant recover his costs. This answer was verified and to it there was filed a reply in the form of a general denial.

On the trial, after the admission of the cash payment of $2,000 and the telegram from defendant for definite advice as to title entries to which plaintiff was objecting and return of the abstracts, the plaintiff called the defendant to the witness stand and he testified over objection of his attorney that he never owned the northeast quarter of section 3, township 8, range 7, Pottawatomie county. The attorney for the defendant asked defendant a number of questions in cross-examination about the land shown the purchaser and about subsequent correspondence, to all of which an objection was sustained. No other testimony was offered by plaintiff, and the court overruled the demurrer of defendant to plaintiff's evidence. The defendant then took the stand in his own behalf and was asked questions about a mistake in the description in the contract where it read northeast quarter instead of the northwest quarter and concerning letters written the purchaser about the mistake, but the court sus-

tained objections to such as not being within the issues and that it was attempting to vary the terms of a written instrument by oral testimony. The defendant then called as his witness the plaintiff, and similar questions were asked him about the mistaken description and the attempted correction thereof, but objections to such testimony were sustained for the same reason. There was no further testimony and the court discharged the jury and rendered judgment for the plaintiff.

After all the testimony was introduced the defendant asked to amend his answer by pleading a mutual mistake and facts for the reformation of the contract. The court denied both motions, and the defendant appeals.

The assignments of error are mainly the exclusion of evidence of mutual mistake as to description and that the rescission was not made on that account, in not applying the law of estoppel to the plaintiff in the rescission of the contract which was unreasonable in point of time, in overruling defendant's demurrer to the evidence of plaintiff and his motions to amend, and for a new trial.

The trial court in its rulings considered two things in particular: the necessity of excluding the evidence to show a mutual mistake of description of the land in the contract by oral testimony attempting to vary the terms of the written contract, and the reasonableness of the length of time in which to perform on the part of the defendant. Appellant insists that the rescission was not made on account of the mistake in the description in the written contract as to a part of the land, basing such conclusion, undoubtedly, upon two answers of the plaintiff that the defects in the title were considered in that connection and "not particularly" because of the wrong description in the contract. So we shall consider both such matters as to whether they were grounds for rescission. The former would be entirely out of the picture if the mistaken description had been shown to have been a mutual mistake, as defendant tried to show in every way without having first made it an issue in the pleadings.

Appellant insists that this mistake in the description of some of the land sold was collateral to the matter on which the minds of the parties had agreed, namely, the number of acres sold, and cites 5 Pomeroy's Equity Jurisprudence, 2d ed., 4745, where it is said:

"In general, however, mutual mistake as to a mere collateral matter not of the essence of the contract, when the sources of information are open to both parties alike, is not a ground for relief."

11 C. J. 959 defines collateral as a side or secondary fact, and in connection with cross-examination of witnesses the term "collateral" is in 70 C. J. 1046 classified and associated with the words "irrelevant" or "immaterial."

It is difficult to think of the total acres purchased as the all-important matter in a contract of sale and purchase, and the description or location of the acres being secondary or collateral. The letter of the attorney for plaintiff of August 12, 1935, which is exhibit C, attached to the petition, stated the basis of the rescission of the contract as follows:

". . . if the contract is not closed up by furnishing an abstract to show title according to the contract to the lands described therein by the 15th of September, 1935, Mr. Parker will declare the contract at an end."

Exhibit E, also being a letter of the same party, dated August 23, 1935, stated:

". . . that unless you could furnish abstracts of title to the lands covered by the contract in accordance with the terms of the contract by September 15, 1935, that Mr. Parker would call the contract at an end. I fail to see how you could make good title through court as you could not convey the title until after six months from the date of the decree; Mr. Parker of course is not asking that you quiet the title or take any action along that line. Unless title is furnished as per the contract by September 15, 1935, you can consider the contract rescinded by Mr. Parker. . . ."

The erroneous description of the land sold and the defective titles are both grounds on which rescission could be based. In the case of *Hazelton v. Chaffin*, 109 Kan. 175, 197 Pac. 970, it was said:

"Where there is neither plea nor proof of fraud or mutual mistake, it is conclusively presumed that the written contract contains the whole terms and the only terms of the contract; and a person who has thus obligated himself cannot defeat a recovery on such contract by parol evidence of matters at variance therewith. Were the rule otherwise the making of a written contract would be a vain and useless undertaking. This has always been the law in this state." (p. 177.)

In *Radebaugh v. Dillon*, 119 Kan. 492, 240 Pac. 406, it was held:

"Where a written contract was complete and free from ambiguity, and where neither fraud nor mutual mistake was pleaded or proved, parol testimony of a contemporaneous oral contract relating to the same matter was incompetent." (Syl. ¶ 2.)

It was held in *Colt Co. v. Kocher*, 123 Kan. 286, 255 Pac. 48, that—

"Rule followed that in the absence of pleading and proof of some species of fraud or mutual mistake in the procuring of a party's signature to a plain and

unambiguous written contract, it must be enforced according to its terms, and neither pleading nor proof of a parol understanding at variance with such terms can be considered." (Syl.)

We are unable to place any other interpretation upon the questions asked by the defendant than that it was an attempt to prove a mutual mistake and to vary the terms of a written contract, and the exclusion of such evidence comes within the rules of this court on this subject. We also conclude that this erroneous description, and also the defective titles, were made the grounds for the rescission.

Was the time allowed by the plaintiff before rescission unreasonable, when the contract was made on June 19, and September 15 was set, on August 12, for rescission if the terms of the contract were not met by the defendant by that time? We think not, under all the circumstances here involved. Besides, the title was not quieted until fifteen days after the plaintiff declared rescission, and ordinarily titles that are quieted in the usual manner against unknown heirs and others are not marketable for some time after the decree is rendered. (G. S. 60-2530.)

Appellant discusses the question of estoppel and cites some authorities along that line. We fail to find in the pleadings or evidence any basis for estoppel. The plaintiff did nothing shown to have been misleading; neither do we think that a formal reformation of the contract was necessary in this case, although the defendant might have pursued that course if desired and with the permission of the trial court if such request had been made before the conclusion of the case.

We find no error in refusing permission after the close of the trial to amend the answer for this purpose and to allege a mutual mistake. This motion and the motion for a new trial were, we think, properly overruled.

The judgment is affirmed.